# EXHIBIT Z

## KUEHNE + NAGEL RESPONSE TO EEOC
## AUGUST 2010-JANUARY 2011



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

International Place Tower II
6410 Poplar Avenue, Suite 300
Memphis, TN 38119
Telephone: 901.767.6160
Facsimile: 901.767.7411
www.ogletreedeakins.com

Russell W. Jackson, Esq.
russell.jackson@ogletreedeakins.com



January 13, 2011

**VIA U. S. MAIL & FACSIMILE (901) 544-0111**
Terry Lewis, Investigator
Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN 38104

Re:  Charging Party:   Rodney V. Johnson
     Respondent:       Kuehne + Nagel Inc.
     EEOC Charge Nos.: 490-2010-01662, as amended

Dear Ms. Lewis:

This letter is submitted on behalf of Respondent Kuehne + Nagel Inc. ("K+N") as its statement of position in response to the above-referenced amended charge. This statement of position should be considered by the Commission as K+N's discussion of the merits of the case for the purpose of any future conciliation or conference regarding this matter. It does not constitute an affidavit or admission of any kind and is not intended to be used as evidence in any court proceeding. In submitting this position statement, K+N does not waive any defenses, whether substantive or procedural, it may have to the Charge, all of which are expressly reserved. By providing information or material, whether requested by the Commission or in explanation of such material or otherwise, K+N does not waive any objection to the admissibility, materiality, or relevancy of such material in this or any other proceeding.

From the face of the Amended Charge, it is our understanding that Charging Party has brought forth new claims alleging that he was denied a reasonable accommodation, he was subjected to unspecified acts of sexual harassment, he was discriminated against in violation of the Genetic Information Non-Discrimination Act, he was discriminated and retaliated against for complaining of equal pay, and he was terminated for previously filing an EEOC charge against K+N alleging sexual harassment.

Regarding these new allegations, Charging Party provides absolutely no facts or specific allegations which K+N can investigate and to which K+N can provide a more detailed response.



We therefore respectfully refer to K+N's August 13, 2011 statement of position, which provides a detailed explanation of the legitimate, non-discriminatory basis for all actions against Charging Party.[1] K+N adamantly denies all of Charging Party's allegations in the amended charge. Simply put, K+N terminated Charging Party's employment at the end of his provisional period because of his inability and/or refusal to follow explicit directions, his overall poor performance, and his below-standard work ethic. There is no evidence whatsoever that his termination was based any of the eight protected classes which Charging Party has now asserted.

In light of the information and documentation contained herein and in K+N's original statement of position, it is apparent that there are no factual or legal bases for Charging Party's claims of discrimination, and K+N respectfully requests that the Commission render a no-cause finding in this matter without further action.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Michael Oliver Eckard
Russell W. Jackson

---

[1] We further note that the original position statement addressed Charging Party's failure to accommodate claim. (August 13, 2010 Statement of Position, p. 8, n. 12.) Additionally, Charging Party did not allege that he was subjected to any form of sexual harassment until more than five months after his termination. Thus, this claim is clearly without merit. Regarding his retaliation claim, as provided in the original position statement, K+N's management was unaware until after Charging Party's termination that he had been previously employed by a temporary employment agency or that he had filed a previous charge. (Id. at p. 3.) Furthermore, K+N *hired* Charging Party after he filed his original charge. (Id.) Accordingly, his retaliation claim also fails.

PS



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*Attorneys at Law*

International Place Tower II
6410 Poplar Avenue, Suite 300
Memphis, TN 38119
Telephone: 901.767.6160
Facsimile: 901.767.7411
www.ogletreedeakins.com



Russell W. Jackson, Esq.
russell.jackson@ogletreedeakins.com

August 13, 2010

**VIA U. S. MAIL & FACSIMILE (901) 544-0126**
Ms. Karen R. Johnson
Enforcement Supervisor
Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN 38104

Re:  Charging Party:  Rodney V. Johnson                 w/also
     Respondent:      Kuehne + Nagel, Inc.              25A-2011-00131
     EEOC Charge Nos.: 490-2010-01662 & 25A-2010-00608

Dear Ms. Johnson:

Respondent, Kuehne + Nagel, Inc. ("K+N" or the "Company") submits this statement of position in response to the allegations of discrimination on the basis of race, color, age, disability and retaliation contained in the above-referenced charges.[1] This statement of position should be considered by the Commission as K+N's discussion of the merits of the case for the purpose of any future conciliation or conference regarding this matter. It does not constitute an affidavit or admission of any kind and is not intended to be used as evidence in any court proceeding. In submitting this position statement, K+N does not waive any defenses, whether substantive or procedural, it may have to the Charges, all of which are expressly reserved. By providing information or material, whether requested by the Commission or in explanation of such material or otherwise, K+N does not waive any objection to the admissibility, materiality, or relevancy of such material in this or any other proceeding.

From the face of the Charges, it is our understanding that Charging Party claims that K+N discriminated against Charging Party because of his race, color, age and disability and in

---

[1] As advised by the Commission, Respondent is providing this information in response to both charges. Charge No. 490-2010-01662 will be referenced as the "May 12, 2010 Charge" and Charge No. 25A-2010-00608 will be referenced as the "May 24, 2010 Charge."

Atlanta • Austin • Birmingham • Bloomfield Hills • Boston • Charleston • Charlotte • Chicago • Cleveland • Columbia • Dallas • Greensboro • Greenville • Houston • Indianapolis • Jackson • Kansas City
Los Angeles • Memphis • Miami • Morristown • Nashville • New Orleans • Philadelphia • Phoenix • Pittsburgh • Raleigh • St. Louis • St. Thomas • San Antonio • San Francisco • Tampa • Torrance • Tucson • Washington

retaliation for allegedly engaging in protected activity.[2] As set forth below, there are no factual or legal bases for Charging Party's claims, and his Charges should be dismissed.

## K+N's Background

K+N is a third-party logistics provider with approximately forty distribution centers nationwide. K+N provides logistics services to its customers by way of shipping, receiving and storing its customers' commercial products. As a result of entering into a contract with a large printer and printer supplies company, K+N restarted operations in its Southaven, Mississippi Distribution Center in November 2009.[3] Since then, K+N has undergone major hiring initiatives and continues to seek out individuals with relevant experience.

K+N maintains a workplace committed to equal employment opportunity and prohibits discrimination or harassment against individuals on the basis of any category protected by law, including discrimination against applicants or employees because of their race, color, religion, sex, national origin, age, disability or any other characteristic protected by law. (*See* Ex. 1, p. 8.) This policy is listed in K+N's associate handbook, which Charging Party acknowledged reviewing on February 10, 2010. (*See* Ex. 2.) Additionally, all employees undergo New Hire Orientation, wherein this policy is explicitly reviewed with employees. (*See* Ex. 3.) K+N's policy also provides that

> Associates who have questions or concerns about any type of discrimination in the workplace are encouraged to bring these issues to the attention of any supervisor, department manager, Distribution Center Manager, local Human Resources Representative, Regional VP or Corporate Human Resources. Associates can raise concerns and make reports without fear of reprisal. Anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of employment.

(*See* Ex. 1, p. 8.)

During New Hire Orientation, employees are also informed that "[d]iscrimination or harassment based on race, religion, age sex, national origin, disability or any other legally protected status is considered a form of employee misconduct." (*See* Ex. 3.) Supervisors and managers are also required to complete online training on K+N's anti-harassment policy.

---

[2] Although Charging Party did not check the specific boxes or specifically state he was discriminated against on the basis of sex, he alleges that he complained about "disparate treatment and discrimination based on …sex (Male)." (*See* May 12, 2010 Charge.) In case Charging Party is alleging discrimination based on sex, K+N addresses this claim in Section I(E). To the extent Charging Party is asserting such a claim, K+N contends that it has not been properly raised or preserved in a Charge of Discrimination.

[3] K+N previously occupied the Southaven facility under a previous contract, but immediately before obtaining the current contract had not been operating in it.

2

K+N employs all employees on an at-will basis. An employee can be terminated at any time, with or without cause or notice, at the option of K+N or the employee. At the time of his hire, Charging Party acknowledged understanding that he was an at-will employee. (*See* Ex. 2.)

### Charging Party's Employment[4]

Charging Party previously worked at K+N's Southaven, MS facility through Aerotek, Inc. ("Aerotek"), a temporary employment agency. On February 15, 2007, Charging Party was terminated by Aerotek after Aerotek investigated an allegation that Charging Party had sexually harassed another employee and determined that his actions warranted termination. After his termination, Charging Party filed an EEOC charge alleging that K+N discriminated against Charging Party based upon his sex and in retaliation for complaining about sexual harassment, even though he was an employee of Aerotek and not K+N. (*See* Ex. 5.) After an investigation, the EEOC dismissed Charging Party's charge on April 4, 2008.[5] (*See* Ex. 6.)

When K+N began recruiting again for the Southaven facility to staff work for its new customer, Charging Party applied for an open position. K+N hired Charging Party as a Forklift Driver on February 10, 2010.[6] K+N uses each employee's first 90 days as an "introductory" or provisional period to evaluate the employees' capabilities, work habits and overall performance. (*See* Ex. 1, p. 12.) Charging Party was informed that his first 90 days would be a provisional period when he received his offer letter.[7] (*See* Ex. 9.)

In late February 2010, Charging Party approached K+N's Human Resources Department stating that he had substantial inventory management experience. At that time, the Company was seeking suitable applicants for many positions, and it had a specific need for individuals with experience in inventory. Based upon Charging Party's comments, which included holding himself out as an "inventory expert," Inventory Control Manager Jeffrey Shaw (African-American, 43 years old) decided to promote Charging Party to the position of Cycle Counter on March 1, 2010.

As a Cycle Counter, Charging Party was responsible for ensuring that K+N's electronic Warehouse Management System accurately reflected both the quantity and location of its inventory throughout the facility. This is necessary to make certain that K+N is accurately informing its customers of the amount of its stocked inventory so that K+N's products can be located and shipped upon order.

---

[4] Charging Party's personnel file is attached hereto as Exhibit 4.

[5] The instant charges are the fourth and fifth discrimination actions against an employer of which K+N is aware. (*See* Ex. 7, Ex. 8.) Additionally, subsequent to Charging Party's termination, he filed a worker's compensation claim, which is the sixth workers compensation claim by Charging Party against an employer of which K+N is aware. His latest worker's compensation claim was denied on May 25, 2010 by K+N's insurance carrier.

[6] At the time Claimant was hired by K+N, management was unaware of his previous employment through Aerotek or the circumstances of his prior termination.

[7] During the provisional period, K+N's supervisors normally do not issue written reprimands or formal disciplines because if an employee would require discipline that early in the employment, the employment would typically not extend past the provisional period.

3

Inventory Analysts coordinate the jobs of Cycle Counters, and there is one Inventory Analyst for each shift. James Bolton (African-American, 39 years old) was the Inventory Analyst for Charging Party's shift (first shift) at the time Charging Party was promoted. Following Charging Party's promotion, Bolton began observing problems with Charging Party's performance. These problems included Charging Party's inability or refusal to properly follow procedures, failure to understand straightforward tasks without detailed and time-consuming explanation, talking with other employees for lengthy periods of time while he should be working, and an apparent inability or refusal to grasp the overall requirements of his position. Bolton informed his and Charging Party's supervisor, Jeffrey Shaw, of Bolton's concerns and stated that he believed Charging Party was not a "good fit" for the Company. Because Charging Party and Bolton were both new to Shaw's supervision, Shaw was initially reluctant to take any action against Charging Party based solely on Bolton's observations before Shaw could corroborate the performance issues identified by Bolton. Therefore, Shaw decided not to take any action against Charging Party at that time.

On April 4, 2010, Bolton moved to second shift, and Cynthia Harrison (African-American, 36 years old) took over as the Inventory Analyst on first shift. After Harrison had adequate time to observe and analyze the performance of the Cycle Counters on first shift, the Distribution Center Manager Larry Golden (African-American, 44 years old) asked her and the other Inventory Analysts to rank their respective Cycle Counters. Harrison ranked Charging Party last out of the Cycle Counters on first shift. Because Charging Party had represented himself as someone with extensive inventory experience, Shaw was curious as to why Charging Party had been ranked last. Harrison informed Shaw that Charging Party lacked any sense of urgency, had an inability (or refused) to follow instructions, and that for simple tasks, Charging Party would require 20-30 minutes of explanation.

As a result of the similar feedback Shaw received from Bolton and Harrison, Shaw became worried about Charging Party's work performance. Additionally, because inventory management involves meticulous counting of K+N's products, and the Company has specific procedures for its Cycle Counters to follow to ensure the most effective and efficient methods, Shaw was particularly concerned that this was the second time that Shaw had been notified that Charging Party was not following proper directions. Thus, Shaw became more involved in supervising and observing Charging Party's performance. In doing so, Shaw repeatedly found that Bolton and Harrison's concerns were warranted – Charging Party would not (and seemingly refused to) follow the Company's explicit directions. Additionally, on several occasions, Shaw was unable to locate Charging Party at times when Charging Party was scheduled to be working and Shaw should have been able to find him.

When Shaw would question Charging Party, Charging Party would attempt to provide an excuse or blame a co-worker for his deficiencies. As an example, at one point, an hourly worker and a supervisor both reported to Shaw that Charging Party had informed them to follow a procedure that was different than that set forth by the Company. This was against Company policy, and Charging Party had not been instructed to provide such direction. Therefore, Shaw asked Charging Party about the incident. Without knowing that a supervisor had also reported to Shaw that Charging Party had provided misguided instructions, Charging Party vehemently

disputed what the hourly employee had reported, alleging that it was "false or misleading information." (*See* Ex. 10.)

Charging Party's performance also fell well below the Company's expectations. At the conclusion of one week, Harrison realized that her shift's production level was extremely low and informed Shaw. When Shaw investigated, he determined that Charging Party's production was significantly lower than the next lowest Cycle Counter. Additionally, as noted previously, Shaw repeatedly had trouble locating Charging Party on the plant floor, which should not occur if an employee is actually performing his/her tasks.

At the end of Charging Party's provisional period, Shaw recommended terminating Charging Party's employment because of Charging Party's overall below standard performance, including his inability or refusal to follow instructions, poor productivity, and overall work ethic.[8] This decision was supported by HR Manager Jeffrey Werner (White, 42 years old) and was approved by Distribution Center Manager Larry Golden. Charging Party's 90th day was May 10, 2010, and Werner and Shaw planned to communicate this decision to Charging Party at the end of his shift. However, Charging Party left his shift early on May 10th, and Werner and Shaw were unable to notify Charging Party of the decision until the following day – May 11, 2010.

### I.     Charging Party Cannot Prevail On His Discrimination or Retaliation Claims

In order to prevail on his claims of discrimination and retaliation, Charging Party must first establish a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973). Only if the elements of a *prima facie* case are established does K+N have the burden of producing a legitimate, non-discriminatory reason for Charging Party's termination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once K+N satisfies its burden of production, any rebuttable presumption of discrimination disappears, and Charging Party must prove that the proffered reasons are a pretext for discrimination. *Id.* The employer is not required to prove the absence of discriminatory motive. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24 (1978). Ultimately, the burden of proof remains at all times with the Charging Party to establish that he was the victim of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Charging Party's mere allegation and unsubstantiated claims that any action was because of a protected class, without any evidence to substantiate that claim, is insufficient to carry his burden of establishing discrimination. *See Douglass v. United States Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (summary judgment for employer where evidence was no more than plaintiff's subjective belief).

#### A.     Charging Party Cannot Establish a *Prima Facie* Case of Discrimination Based on Race, Color, or Age.

In order to establish a *prima facie* case of race, color or age discrimination, Charging Party must show that (1) he is a member of a protected group; (2) he was otherwise qualified for

---

[8] K+N employees typically receive a performance review near the end of their provisional periods. (Ex. 1, p. 12.) However, because K+N's Southaven facility has hired or re-hired a sizeable amount of employees since November, 2009 (approximately 175), K+N has been unable to conduct these performance reviews on the normal timeline.

5

the position; (3) he was subjected to an adverse employment action; and (4) similarly-situated non-protected employees were treated more favorably. *See e.g., Lee v. Kansas City Southern Railway*, 574 F.3d 253, 259 (5th Cir. 2009).

Here, Charging Party claims that K+N discriminated against him by denying him a transfer to second shift, denying him promotional training that a younger white employee ("Chris") received, being paid less than Chris and terminating Charging Party's employment based on his race, color and age. Charging Party, however, cannot establish a *prima facie* case because he cannot show that he was qualified for his position or that he was treated less favorably than similarly-situated employees outside his protected classes. Further, K+N has proffered a legitimate, non-discriminatory reason for terminating Charging Party – unsatisfactory performance throughout his provisional period – which Charging Party cannot rebut.

### 1. Charging Party was not qualified for his position, and therefore, Charging Party cannot establish the first prong of the *prima facie* case.

In order to demonstrate that he was qualified for his position, Charging Party must establish that he was performing his job at a level that met his employer's expectations and that he was performing his job satisfactorily. *Johnson v. South Mississippi Home Health*, 158 F.3d 584, 1998 WL 648526, *1 (5th Cir. 1998); *Pita Santos v. Evergreen Alliance Golf Ltd.*, LP, 650 F.Supp.2d 604, 609-11 (S.D. Tex. 2009). During his provisional period, Charging Party was not meeting K+N's expectations. K+N received numerous complaints about Charging Party from various employees reporting that Charging Party continuously had trouble following instructions, had low productivity and was overall a poor performer. Ultimately, Charging Party did not live up to the standards that he had led K+N to expect of someone with his alleged experience in inventory. Accordingly, Charging Party cannot prove that he was qualified for his position, and his discrimination claims must fail.

### 2. Charging Party cannot prove similarly-situated employees were treated more favorably.

To be deemed "similarly-situated", Charging Party must show that those individuals dealt with the same supervisor, were subjected to the same standards and engaged in "nearly identical" conduct without such circumstances that would distinguish their conduct or K+N's treatment of them for it. *Pita Santos*, 650 F.Supp.2d at 610. In other words, the employees must be "comparable in all material respects." *Bugos v. Ricoh Corp.*, 2008 WL 3876548, *5 (5th Cir. Aug. 21, 2008). Charging Party alleges that Chris (White male, 33 years old), James Craig (White male), Louis (a light-skinned African American) and an unidentified Caucasian/Indian were treated better than Charging Party. However, these are not similarly-situated employees nor were they treated more favorably.

K+N presumes that the "Chris" Charging Party references is Christopher Relyea, a White male, 35 years old. However, Relyea was in the exact same position as Charging Party, Cycle Counter, making the exact same amount as Charging Party - $14.00/hour. Additionally, Relyea and Charging Party received the exact same training that K+N provides to all Cycle Counters.

6

Moreover, Relyea has not had any performance or other work-related problems, much less the amount Charging Party had, and therefore, Charging Party and Relyea are not similarly-situated.

Craig also was not a similarly-situated employee. As an initial matter, Craig is employed as a supervisor, an entirely different position than Charging Party. On that basis alone, he is not a similarly-situated employee. Beyond that, Craig was involved in an incident wherein an employee accused Craig of saying, "someone tell [the supervisor] that I'm not his nigger; I'm not his Kunte Kinte." This was reported to Werner who conducted an investigation that involved interviewing the four employees that were present and Craig.[9] Craig denied saying the word "nigger," but admitted to saying "Kunte Kinte." Terry Givens was present and informed Werner that he believed Craig mumbled "nigger." The other three employees stated that they had not heard what Craig had said. Because even under Craig's own admission, he had used an offensive and disrespectful remark, Distribution Center Manager Larry Golden (African-American male), in consultation with the corporate human resources department, decided to issue Craig a Final Warning stating that any future violations may result in further disciplinary action up to and including termination.[10] (*See* Ex. 11.) Thus, there is no basis for Charging Party's claim that Craig was not disciplined. Simply put, K+N does not tolerate that sort of behavior.

Charging Party mentions one "light skin[ned]" African-American male that he alleges was treated better than Charging Party – Louis. (*See* May 12, 2010 Charge.) However, this employee, Louis Gilliam, was not a similarly-situated employee because, differing greatly from Charging Party, Gilliam had no performance-related issues other than the alleged incident mentioned in the Charge, which was thoroughly investigated and the company could not find any evidence to substantiate the allegations. Indeed, in this instance, the alleged victim himself informed the company that he did not believe Gilliam had engaged in any sexual harassment through the alleged touching. Further, Mr. Gilliam was also a supervisor and not in the same type of position as Charging Party. Contrary to Charging Party's allegation, Gilliam *was* counseled as to the incident Charging Party references. Thus, any discrimination claim based on color is without merit.

Charging Party also mentions an unidentified "[C]aucasian/[I]ndian that was caught sleeping" by another manager and was not terminated. (*See* May 24, 2010 Charge.) Respondent is unaware of this allegation. However, Charging Party does not allege that this unidentified employee had the same performance problems during a provisional period, and therefore such a person is not a "similarly situated employee" for purposes of Title VII, and therefore this allegation is also meritless.

---

[9] Notably, Charging Party was not present for this alleged incident and was not one of these four employees.

[10] K+N originally hired Craig on April 17, 2000. He was rehired on December 14, 2009 and was technically in his provisional period at the time of the alleged incident. However, Craig had a strong employment history with K+N, and at the time K+N determined the appropriate level of correction, his work history was taken into consideration. Further, given the uncertainty as to whether he made the exact offensive remarks reported to the Company (which he denied), K+N determined that a final warning, as opposed to termination, was the most appropriate response. This is the most serious form of discipline issued by K+N short of termination.

7

Furthermore, similar to Charging Party, three white employees (Stephanie Hamby, Cynthia Linehan, and Gary Morton), two light-skinned African-American employees (Marcus Dortch and Terry Givens)[11] and eight employees over the age of 40 (Juan Blanco, Shakera Cobb, Terry Givens, Lashundra Jennings, Shelia Lockhart, Steven Moore, Scott Scott, Ernest Williams) have been terminated at the conclusion of their provisional period for unsatisfactory performance during the provisional period. For these reasons, Charging Party cannot prove that a similarly-situated employee outside his protected classes was treated more favorably than Charging Party.

Additionally, two of the decision makers with respect to Charging Party's termination at the end of his provisional period, Shaw and Golden, are African-American and over 40 years old. The other decision maker, Werner, is over 40 years old as well. Accordingly, there can be absolutely no inference of discrimination. *Skinner v. Brown*, 951 F. Supp. 1307, 1320 (S.D. Tex. 1996) (holding that where a decision-maker is a member of the same protected class as the plaintiff, the facts enhance the inference that no discriminatory motive existed). Indeed, Charging Party was actually promoted by K+N over other employees based on his representation of his specialized skill set. There is clearly no merit to Charging Party's claims.

### B. Charging Party Cannot Establish a *Prima Facie* Case of Discrimination Based on Disability.[12]

In order to establish a *prima facie* case of disability discrimination under the Americans with Disabilities Act ("ADA"), Charging Party must prove that: (1) he has a disability; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability or the perception of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *E.E.O.C. v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606 (5th Cir. 2009).

#### 1. Charging Party cannot show that he has a disability under the ADA.

Charging Party cannot establish that he has a disability within the meaning of the ADA. In order to establish that he has a disability within the meaning of the ADA, Charging Party must demonstrate that he (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) the employer regarded him as having such an impairment. 42 U.S.C. § 12102(2).

K+N is not aware of Charging Party suffering from any disability within the meaning of the ADA. The only medical issue of which Respondent is aware is that Charging Party previously mentioned that he had high blood pressure when requesting time off to attend a routine doctor's appointment. However, Charging Party has failed to allege that (1) his high blood pressure is a disability or (2) his high blood pressure substantially limits any major life

---

[11] K+N does not track its employees' "skin color" and has provided this information as a guess as to the employees' skin colors.

[12] To the extent that Charging Party is alleging a failure to accommodate claim, Respondent states that there is absolutely no evidence that Charging Party ever requested such an accommodation or that Respondent denied any such accommodation. Accordingly, any such claim must fail.

8

activities. Under the EEOC proposed regulations, high blood pressure is an example of an impairment that *may be* disabling for some individuals but not for others.[13] *See Oswalt v. Sara Lee Corp.*, 74 F.3d 91 (5th Cir. 1996) ("[h]igh blood pressure alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the ADA.") Accordingly, Charging Party must show that the high blood pressure substantially limits one or more major life activities. Here, Charging Party has brought forth no facts demonstrating that his high blood pressure substantially limits any major life activity.

Charging Party has also failed to establish that he has a record of a physical or mental impairment that substantially limits one or more of his major life activities or that Respondent regarded him as having such an impairment. Therefore, Charging Party cannot prove that he has a disability under the ADA, and his disability discrimination claim must fail.

### 2. Charging Party cannot show that he was qualified for his job.

A "qualified individual with a disability" is one who can perform the "essential functions" of the job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). As is clear, however, Plaintiff was not satifactorily performing his job as a Cycle Counter. Accordingly, Charging Party cannot establish that he was qualified for his position, and his ADA claim must fail for this reason as well.

### 3. Charging Party cannot prove that he was subjected to an adverse employment action on account of his disability or the perception of his disability.

As Charging Party cannot establish that he is disabled, he cannot establish that Respondent knew or had reason to know of his "disability." The ADA requires knowledge not just of the disability, but knowledge of the physical or mental limitations the employee experiences as a result of the disability. *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 163 (5th Cir. 1996). Where the defendant is unaware of the plaintiff's precise limitations, the plaintiff cannot establish a *prima facie* case. *Id.* Here, there is simply no evidence that Respondent knew of any of Charging Party's alleged limitations. Even in the charges, Charging Party has offered no statement of any physical or mental limitations he experiences as a result of an alleged disability. Finally, as shown throughout this position statement, there is absolutely no evidence that K+N took any action against Charging Party for any reason other than his consistent problems performing his job during the provisional period. Accordingly, Charging Party's disability claim fails.

### C. <u>Charging Party Cannot Establish a *Prima Facie* Case of Retaliation.</u>

In order to establish a *prima facie* case of retaliation, Charging Party must demonstrate that (1) he engaged in activity protected by Title VII; (2) he suffered a materially adverse employment action; and (3) a causal link exists between his protected activity and the adverse

---

[13] 29 C.F.R. 1630(j)(6)(B), Regulations To Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, located at http://edocket.access.gpo.gov/2009/E9-22840.htm.

9

employment action. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006). Charging Party cannot establish prongs one and three of a *prima facie* case.

To establish that he engaged in protected activity, Charging Party must establish that he "opposed any practice made an unlawful employment practice by [Title VII]," or that he "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 n. 8 (5th Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a))).

Charging Party states that he complained to Werner about Shaw and discrimination based on color, race, sex, age and disability. However, there is only one instance wherein Charging Party even referenced any protected activity. On April 28, 2010, as Werner was walking through the facility, Charging Party told Werner that he believed that Shaw was treating another employee, Quantreal Underwood (African-American, 37 years old), harshly and that maybe Shaw was "racist against his own kind." When Werner asked Charging Party for specifics, Charging Party was unable to provide any. Werner promptly investigated this allegation. This included interviewing the other Cycle Counters, including Underwood. These employees refuted this allegation against Shaw and informed Werner that Charging Party was not their spokesperson. Werner determined from his investigation that there was no merit to Charging Party's allegation.

Furthermore, Charging Party has failed to establish any link between a protected activity and his termination at the end of the provisional period. Charging Party's only comment mentioning a protected activity occurred weeks before the conclusion of his probationary period, and even so, temporal proximity alone is insufficient to establish a causal connection for a retaliation claim. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Moreover, Complaints regarding Charging Party began while Bolton was still on first shift, and thus, prior to April 4, 2010. Accordingly, Charging Party's performance issues began prior to any protected activity, and thus, there can be no causal connection between any protected activity and the adverse employment action. Charging Party's termination was the direct result of his unsatisfactory performance throughout his provisional period and not the result of anything else.

### D. K+N Had a Legitimate, Non-Discriminatory Reason for Terminating Charging Party.

As described in more detail above, it is evident that K+N had valid reasons, wholly unrelated to Charging Party's race, color, age, disability or any complaint made by Charging Party, for terminating Charging Party's employment after the provisional period. These included his inability or refusal to follow instructions, his poor performance and his unsuitable work ethic. Each of these concerns were observed and reported by Bolton, Harrison and Shaw. Accordingly, K+N determined that it did not wish to extend his employment beyond the provisional period. As is clear, K+N had legitimate, non-discriminatory, non-retaliatory reasons for terminating Charging Party's employment, which Charging Party cannot show were pretextual.

### E. Charging Party Did Not Specifically Allege Discrimination Based on Sex, But This Claim Also Fails.

Although Charging Party did not check the specific boxes or specifically state that he was discriminated against on the basis of sex, Charging Party also alleges that he complained about "disparate treatment and discrimination based on [his] ...sex (Male)." (*See* May 20, 2010 Charge.) To the extent Charging Party is alleging that he was discriminated against based sex, this claim fails.

The only female Charging Party points to in the Charge is Robbie Townsend, whom Charging Party alleges received her back pay before Charging Party. Unlike Charging Party, Townsend was hired as a Cycle Counter and thus, was immediately entered into payroll at the appropriate pay level - $14.00/hour. As shown above, Charging Party started as a Forklift Driver and was promoted to Cycle Counter making $14.00/hour on March 1, 2010. Promotions, unlike hires, require a lengthy approval process and can take weeks to get adjusted in payroll. When Charging Party's pay rate was changed, Charging Party was retroactively paid from March 1st. Townsend was not a similarly-situated employee, and Charging Party did not suffer an adverse employment action. Accordingly, any claim based on sex discrimination also fails.

### II. Charging Party Cannot Prevail On His Hostile Work Environment Claim.

Charging Party makes no factual allegations to substantiate his claim that he was "continuously harassed." (May 24, 2010 Charge.) As Charging Party has alleged four protected classes, of which he believes he was discriminated against, Respondent is unable to fully articulate a response to this additional meritless claim. Regardless, Charging Party is unable to prove a *prima facie* case of harassment.

To establish a hostile work environment claim, Charging Party must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected category; (4) the harassment complained of affected a term, condition, or privilege of his employment; and (5) Respondent knew or should have known about the harassment and failed to take prompt remedial action. *Celestine v. Petroleos De Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). Charging Party cannot establish elements two, four or five of the *prima facie* case.

As for element two, Charging Party presents no factual allegations to prove that he was subjected to any unwelcome harassment based on his race, color, disability or age. The only allegation included in the Charges is that a supervisor once allegedly mentioned the word "nigger." However, Charging Party was not present for the alleged comment and therefore cannot show that the comment was made, that he felt that this comment was unwelcome under the circumstances, or that the comment was in any way directed toward him. Furthermore, Charging Party's vague complaint on April 28, 2010 that he felt Shaw was "racist against his own kind" is simply not enough to show that any alleged harassment occurred or that any unwelcome comments or actions were taken against Charging Party. Thus, Charging Party cannot prove this element of his claim.

11

Additionally, Charging Party cannot prove the fourth element. Comments or actions will not be deemed to affect a term, condition, or privilege of employment unless they are sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also, Jeffrey v. Dallas County Med. Examiner*, 37 F.Supp. 2d 525, 531 (N.D. Tex. 1999) (a hostile work environment claim is only actionable where there is a "long pattern of extensive, unredressed threats or conduct" in the workplace). Charging Party points to one comment that James Craig allegedly used, for which Charging Party was not present. Clearly this does not establish an extensive pattern of inappropriate comments. Additionally, Charging Party's subjective belief that Shaw was "racist against his own kind" falls well short of the severe or pervasive standard required to prove actionable harassment. *See Duplessis v. Regis Corp.*, 2001 WL 1636844 (E.D. La. Dec. 19, 2001) (*citing Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[n]either conclusory allegations or 'unsubstantiated assertions'" can sustain a claim of racial harassment or hostility against an employer.)) Finally, Charging Party fails to explain how any actions or comments altered a term or condition of his employment. Accordingly, he cannot prove the fourth element of the *prima facie* case for a hostile work environment.

Turning to the fifth element, Charging Party must also prove that Respondent knew or should have known of the harassing conduct of which he now complains and failed to take prompt remedial action. Charging Party made one vague complaint to HR Manager Werner about his supervisor, and Werner immediately investigated and resolved the incident. Thus, Respondent took prompt remedial action with respect to the only concern it received from Charging Party. Additionally, although Charging Party was not present and thus cannot use the alleged comment to form the basis of Charging Party's harassment claim, K+N also investigated and reprimanded James Craig for using the "n" word. As is clear, Charging Party cannot prove that Respondent knew or should have known of the harassing conduct of which he now complains and failed to take prompt remedial action.

In light of the information and documentation contained herein, it is apparent that there is no factual or legal bases for Charging Party's claims of discrimination, and K+N respectfully requests that the Commission render a no-cause finding in this matter without further action.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Michael Oliver Eckard
Russell W. Jackson

Enclosures

12